**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

ADA BRILL,

        Plaintiff,             CIVIL NO. 1:13-cv-05643
     v.                       (NLH/AMD)

JENNIFER VELEZ, COMMISSIONER,
NEW JERSEY DEPARTMENT OF
HUMAN SERVICES; and VALERIE         **OPINION**
HARR, DIRECTOR, NEW JERSEY
DEPARTMENT OF HUMAN SERVICES,
DIVISION OF MEDICAL
ASSISTANCE AND HEALTH
SERVICES,
         Defendants.

---

Appearances:

JANE M. FEARN-ZIMMER
ROTHKOFF LAW GROUP
911 KINGS HIGHWAY SOUTH
CHERRY HILL, NJ 08034

*Attorney for plaintiff Ada Brill*

MOLLY ANN MOYNIHAN
STATE OF NEW JERSEY
OFFICE OF THE ATTORNEY GENERAL
R.J. HUGHES COMPLEX
25 MARKET STREET
P.O. BOX 112
TRENTON, NJ 08625

*Attorney for defendants Jennifer Velez and Valerie Harr*

**HILLMAN, District Judge**

Before the Court is Defendants' Motion to Dismiss pursuant
to Fed.R.Civ.P. 12(b)(1).  Plaintiff commenced this action by
filing a Complaint pursuant to 28 U.S.C. § 1983, naming as
defendants Jennifer Velez and Valerie Harr, respectively the
Commissioner of the New Jersey Department of Human Services and
the Director of the Division of Medical Assistance and Health
Services.  (Pl.'s Compl. [Doc. No. 1] ¶¶ 5-6.)  The Complaint
alleges violations of subchapter XIX of the Social Security Act
("Federal Medicaid Act"), 42 U.S.C. §§ 1396 to 1396w-5 (West,
Westlaw through P.L. 113-92).  (See e.g., Id. ¶¶ 46, 48.)
Defendants now move to dismiss on the grounds that the case has
become moot.  For the reasons set forth below, the motion will
be denied.

I.   **Jurisdiction and Standard for Motion to Dismiss Under
     Rule 12(b)(1)**

"Federal courts are courts of limited jurisdiction, and
when there is a question as to our authority to hear a dispute,
'it is incumbent upon the courts to resolve such doubts, one way
or the other, before proceeding to a disposition on the
merits.'"  Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412,
418 (3d Cir. 2010) (citing Carlsberg Res. Corp. v. Cambria Sav.
& Loan Ass'n., 554 F.2d 1254, 1256 (3d Cir. 1977)).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the existence of a federal court's subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  "'When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion.'"  Symczyk v. Genesis HealthCare Corp., 656 F.3d 189, 191 n.4 (3d Cir. 2011) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

A motion to dismiss for lack of subject matter jurisdiction may present either a facial or factual challenge to the complaint.  Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  A facial challenge argues that "the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction."  D.G. v. Somerset Hills School Dist., 559 F. Supp. 2d 484, 491 (D.N.J. 2008).  A factual challenge, by contrast, proceeds by attacking the "jurisdictional allegations set forth in the complaint."  D.G., 559 F. Supp. 2d at 491.

When evaluating a facial attack, "the court must consider the allegations of the complaint as true."  Mortensen, 549 F.2d at 891.  Upon a factual attack, however, the court need not presume the truth of the allegations and "is free to weigh the evidence and satisfy itself as to the existence of its power to

3

hear the case." Mortensen, 549 F.2d at 891.  Moreover, when considering a factual challenge, the Court is "not confined to the allegations in the complaint ... and can look beyond the pleadings to decide factual matters relating to jurisdiction." Cestonaro v. United States, 211 F.3d 749, 752 (3d Cir. 2000) (citing Mortensen, 549 F.2d at 891).  "The defendant may factually attack subject matter jurisdiction at any stage in the litigation, including before the answer has been filed." D.G., 559 F. Supp. 2d at 491.

In the present Motion, Defendants make a factual attack on the Court's subject matter jurisdiction, arguing that Plaintiff's claim has become moot.  Holland v. N.J. Res. Corp., 2013 WL 4780763,*1 n.2 (D.N.J. Sept. 5, 2013)(citing Gordon v. East Goshen Twp., 592 F. Supp. 2d 828, 837 (E.D. Pa. 2009).  Challenges based on the various justiciability doctrines, including mootness, are properly brought under Federal Rule of Civil Procedure 12(b)(1).  See, e.g. Lindell v. Landis Corp. 401(k) Plan, 640 F. Supp. 2d 11, 14 (D.D.C. 2009) (citing Worth v. Jackson, 451 F.3d 854, 857 (D.C. Cir. 2006)).  See also, Ballentine v. U.S., 486 F.3d 806 (3d Cir. 2007).

## II.  **Background**

### A. Medicaid

4

Medicaid is a federal program implemented by participating states.  See 42 U.S.C. §§ 1396 to 1396w-5.  It was created to provide medical care to people "whose income and resources are insufficient to meet the costs of necessary medical services." 42 U.S.C.A. § 1396-1 (West, Westlaw through P.L. 113-92).  As a condition for receiving federal funding, state Medicaid programs must comply with the federal Act and related regulations.  See Harris v. McRae, 448 U.S. 297, 301 (1980); 42 U.S.C. 1396a.

In particular, the Federal Medicaid Act requires states to process applications and provide benefits with "reasonable promptness."  42 U.S.C.A. § 1396a(a)(3), (8); 42 C.F.R. 435.912. Federal regulations further provide that determinations of eligibility, except those based on disability, must be made within forty-five days.  42 C.F.R. 435.912(c)(3).

The federal Act also requires participating states to impose penalty periods of ineligibility for applicants who transfer assets for less than their fair market value ("Impermissible Transfer") within a sixty-month look-back period from the date of application.  42 U.S.C.A. § 1396p(c)(1)(A), (B).

**B. Procedural History**

On March 22, 2012, Plaintiff applied to the Camden County Board of Social Services ("Board") for long-term care benefits under New Jersey's Medicaid program.  (Pl.'s Compl. [Doc. No. 1]

5

¶ 2.)  Due to the fact that Plaintiff had purchased an annuity the day before she filed her application, Plaintiff's caseworker sought guidance from the State on the issue of whether Plaintiff must incur a penalty waiting period before receiving benefits. (Id. ¶¶ 34, 41.)

Approximately fifteen months after filing her application, by letter dated June 21, 2013, Plaintiff learned she would be subject to a penalty period if the Board found her to be otherwise eligible for benefits.  (Id. Ex. F.)  The Penalty period was imposed because the State deemed several asset transfers below fair market value, including the annuity purchase.  (Id.)  The letter also informed Plaintiff she had two weeks to rebut the State's findings by proving that the transfers were not made for the purpose of becoming eligible for Medicaid.  (Id.)  Plaintiff's counsel submitted a letter to the Board explaining why the annuity purchase should not count toward a penalty period, but to no avail.  (Id. ¶ 38.)

On July 29, 2013, Plaintiff received the Board's determination stating that she was eligible for benefits but would be subject to a penalty period until November 17, 2013. (Id. Ex. H.)  In response to the Board's determination, Plaintiff filed this action seeking to enjoin Defendants from treating her annuity purchase as an Impermissible Transfer and from applying a "de facto policy of delaying determinations

6

involving annuities." (Id. Wherefore Clause.) Plaintiff also requested costs, attorney's fees, and "such other relief as the court may deem just and equitable." (Id.)

By letter dated October 4, 2013, two weeks after Plaintiff filed her Complaint, the Board reversed its previous determination and informed Plaintiff that her annuity purchase would not count towards her penalty period. (Defs.' Mem. in Supp. of Mot. to Dismiss [Doc. No. 5] Ex. A.) However, instead of recalculating the penalty period without the annuity, the Board rescinded Plaintiff's eligibility determination, changed her application status to "pending," and requested additional information. (Id.) Today, approximately six months after her initial penalty period was set to expire, Plaintiff still has not received benefits or a revised eligibility determination.

Defendants now move to dismiss the case as moot in light of the Board's reversal of its position regarding Plaintiff's annuity. In particular, Defendants argue there is no longer a live controversy because (1) Plaintiff sought to enjoin Defendants from treating her annuity as an Impermissible Transfer, and (2) the Board decided not to treat Plaintiff's annuity as an Impermissible Transfer. (Id. 16.)

## III. Discussion

Defendants contend the case is moot because, in light of the Board's change of heart, the Court can no longer provide the

7

injunction requested by Plaintiff.  (Id. 17.)  Defendants'
contentions are wrong for two reasons.  First, Defendants have
not satisfied the standard that applies when a defendant
voluntarily ceases the conduct challenged by Plaintiff, and the
Court may still enjoin Defendants from reverting to the
challenged practices.  Second, this case cannot be moot because
the Court can provide meaningful relief other than the
injunction Plaintiff requested.

### A. Voluntary Cessation of Challenged Activity

It is well settled that "voluntary cessation of allegedly
illegal conduct" does not generally moot a case.  Los Angeles
County v. Davis, 440 U.S. 625, 631 (1979).  When a defendant
voluntarily refrains from the conduct challenged by plaintiff,
he is still "free to return to his old ways."  United States v.
W. T. Grant Co., 345 U.S. 629, 632 (1953).  Consequently, "the
court's power to grant injunctive relief survives discontinuance
of the illegal conduct."  Id. at 633.

However, voluntary cessation will moot a case if the
defendant can demonstrate that: "(1) it can be said with
assurance that there is no reasonable expectation . . . that the
alleged violation will recur, . . . and (2) interim relief or
events have completely and irrevocably eradicated the effects of
the alleged violation."  Phillips v. Pa. Higher Educ. Assistance
Agency, 657 F.2d 554, 569 (3d Cir. 1981) (quoting Marshall v.

8

Whittaker Corp., 610 F.2d 1141, 1145 n.9 (3d Cir. 1979))
(internal quotation marks omitted).  The Defendant must shoulder
a "heavy burden" in establishing these two elements.  Phillips,
657 F.2d at 569 (quoting W. T. Grant Co., 345 U.S. at 633)
(internal quotation marks omitted).

In the present case, Defendants have not satisfied their
burden.  Defendants have not identified, nor can the Court
identify, any facts that would *assure* the Court it cannot
reasonably expect Defendants to revert back to their original
position after dismissal.  Without more, the sole fact that the
State voluntarily ceased the challenged conduct cannot provide
the requisite assurance.  To find otherwise would render the
requirement of assurance meaningless.

Moreover, the effects of the alleged violation have not
been completely or irrevocably cured.  The Board found that
Plaintiff was eligible for Medicaid but, due in part to her
annuity purchase, could not receive benefits until November 17,
2013.  Thus, the effect of the challenged conduct – *i.e.*
treating Plaintiff's annuity purchase as an Impermissible
Transfer – was to delay the date when Plaintiff would begin
receiving benefits.  Notwithstanding the Board's change of
position regarding the annuity, Plaintiff remains without
benefits roughly six months after she would have begun receiving
them under the Board's original decision.  Therefore, the effect

9

of the Board's decision to treat Plaintiff's annuity purchase as an Impermissible Transfer has not been cured.

Accordingly, Defendants have not made the necessary showing to establish that the Board's letter of October 4, 2013 rendered the case moot, and the Court may still issue the injunction requested by Plaintiff.

**B. Meaningful Relief**

Furthermore, Defendants' sole focus on the relief requested by Plaintiff is misplaced.  A case is not moot if the court can provide meaningful relief to the plaintiff.  Church of Scientology of Cal. v. United States, 506 U.S. 9, 12 (1992). Consequently, before dismissing a case as moot, the court must be sure the plaintiff would not be entitled to *any* meaningful relief.  See Id.

Federal courts are not limited to the relief requested in the pleadings.  Federal Rule of Civil Procedure 54(c) provides that, except in default judgments, courts "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."  Fed. R. Civ. P. 54(c).  While plaintiffs cannot recover for claims they never alleged, courts should grant the relief justified by the facts for any claim stated.  See USX Corp. v. Barnhart, 395 F.3d 161, 165 (3d Cir. 2004).

The standard for stating a claim is quite liberal.  All
that is required under Rule 8(a)(2) is a "short and plaint
statement of the claim showing that the pleader is entitled to
relief, so that the defendant has fair notice of what the . . .
claim is and the grounds upon which it rests."  Bell Atlantic
Corp. v. Twombly, 550 U.S. 544, 555 (quoting Conley v. Gibson,
355 U.S. 41, 47 (1957)) (internal quotations omitted).  The
notice requirement is met "so long as the court can discern from
the facts a cognizable basis for relief."  Barroso v. N.J.
transit Corp., 2011 WL 111577, *3 (D.N.J. Jan. 13, 2011)
(quoting Etienne v. Oyake, 347 F. Supp. 2d 215, 219 (D.V.I.
2004)).  See also, 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL
PRACTICE AND PROCEDURE § 1357 (3d ed. 2004) ("[T]he district court is
under a duty to examine the complaint to determine if the
allegations provide for relief on any possible legal theory.").
As long as the issues are pled, a plaintiff does not have to
identify each specific theory of relief.  Bechtel v. Robinson,
886 F.2d 644, 649 n.9 (3d Cir. 1989).

Defendants characterize Plaintiff's Complaint as being
premised on the Board's "initial determination that the
purchased annuity be treated . . . as an impermissible
transfer."  (Defs.' Mem. in Supp. of Mot. to Dismiss [Doc. No.
5] 16.)  While the Complaint addresses the Board's treatment of
the annuity at length, the issues and allegations in the

11

Complaint also state a more general claim of failing to proceed with reasonable promptness.

Plaintiff's Complaint is more than sufficient to state a claim based on a violation of the federal mandate to make eligibility determinations with reasonable promptness.  The Complaint specifically refers to the forty-five day processing requirement and alleges that the deadline had long passed by the time the Board issued its first eligibility determination. (Pl.'s Compl. ¶¶ 39-41.) Furthermore, according to the Complaint, Plaintiff waited fifteen months for the State to determine whether her annuity purchase would be deemed an Impermissible Transfer.  (Id. ¶¶ 2, 37.)  The Complaint also alleges that, following the State's initial determination regarding the annuity, Plaintiff waited an additional month for the Board to determine she was eligible for benefits.  (Id. ¶¶ 37, 41.)  In total, according to the complaint, Plaintiff waited over sixteen months for an eligibility determination that should have been made within forty-five days.

If sufficiently proven, the Court can remedy this claim with an injunction against further violation of the reasonable promptness requirement.  Such a remedy would indeed be meaningful since Defendants have managed to draw out Plaintiff's eligibility determination six months (and counting) beyond the date when Plaintiff's original penalty period would have ended.

## IV.   **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss shall be denied.


                                        _s/ Noel L. Hillman _____
                                        NOEL L. HILLMAN, U.S.D.J.


At Camden, New Jersey